**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| CENTRAL SOURCE LLC<br>P.O. Box 105283<br>Atlanta, Georgia 30348,<br><br>    Plaintiff,<br><br>v.<br><br>annualcreditreportmonitoring.com,<br>afreeannualcreditreport.com,<br>thefreeannualcreditreport.com,<br>annalcreditreports.com,<br>annualcrediitreport.com,<br>gfreeannualcreditreport.com,<br>frreannualcreditreport.com,<br>annualcreditreportc.com,<br>annualannualcreditreport.com,<br>annualcreditreporth.com,<br>httpannualcreditreport.com,<br>mannualcreditreport.com,<br>annualbusinesscreditreport.com,<br>feeannualcreditreport.com, and<br>wwwannualcreditreports.com<br><br>    Defendants. | Civil Action No. 1:18cv453 (AJT/MSN) |

## **COMPLAINT**

Plaintiff Central Source LLC, by counsel, alleges as follows for its *in rem* Complaint against Defendants annualcreditreportmonitoring.com, afreeannualcreditreport.com, thefreeannualcreditreport.com, annalcreditreports.com, annualcrediitreport.com, gfreeannualcreditreport.com, frreannualcreditreport.com, annualcreditreportc.com, annualannualcreditreport.com, annualcreditreporth.com, httpannualcreditreport.com, mannualcreditreport.com, annualbusinesscreditreport.com, feeannualcreditreport.com, and wwwannualcreditreports.com (the "Domain Names").

## NATURE OF THE SUIT

1. This is an *in rem* action for cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a).

2. Recent studies have shown that over 95% of the 500 most popular sites on the Internet are the subject of "typosquatting"—registration or use of a domain name that represents a typographical error of the legitimate site—and which is typically used to display advertisements related to the legitimate site, to distribute computer viruses or "malware," or to collect visitors' personal information for inappropriate or illegal uses.

3. Typosquatting harms consumers by causing confusion with the legitimate sites being sought by the consumers and very often results in consumers' computers being infected with computer viruses, "bloatware" or other unwanted software, consumer's personal information being collected and misused, and/or consumers being presented with an endless stream of unwanted advertisements.

4. In the present case, Plaintiff's invaluable rights in the distinctive AnnualCreditReport mark have been deliberately infringed through the bad faith registration and use of the Defendant Domain Names, which domain names are confusingly similar to the AnnualCreditReport mark. Plaintiff previously has pursued a number of actions in this Court to obtain the transfer of similar domain names that infringe upon the AnnualCreditReport mark and were registered in bad faith. *See Central Source LLC v. afreeannualcreditreport.com*, 17-cv-581 (filed May 22, 2017); *Central Source LLC v. freeannualcfreditreport.com*, 17-CV-63 (filed Jan. 13, 2017); *Central Source LLC v. freeannualcreditreport2014.com*, 16-CV-465 (filed Aug. 26, 2016); *Central Source LLC v. anmnualcreditreport.com*, 14-CV-1754 (E.D. Va. Aug. 19, 2015);

*Central Source LLC v. annualcrsditreport.com*, 14-CV-1755, 2015 WL 1880187 (E.D. Va. Apr. 23, 2015); *Central Source LLC v. aniualcreditreport.com*, 14-CV-1345 (E.D. Va. Mar. 2, 2015); *Central Source LLC v. aabbualcreditreport.com*, 14-CV-918 (E.D. Va. Nov. 12, 2014, *amended* Nov. 18, 2014); *Central Source LLC v. annualcreditredport.com*, 14-CV-302, 2014 WL 3891667 (E.D. Va. Aug. 7, 2014); *Central Source LLC v. annualdcreditreport.com*, No. 14-CV-304, 2014 WL 371162 (E.D. Va. Aug. 1, 2014); *Central Source LLC v. annualcreditreport-com.us*, 14-CV-305, 2014 WL 3767071 (E.D. Va. July 30, 2014).

## PARTIES

5. Central Source LLC ("Central Source") is a corporation organized and existing under the laws of Delaware with a principal business address of P.O. Box 105283, Atlanta, Georgia, 30348.

6. annualcreditreportmonitoring.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Cimpress Schweiz GmbH". A copy of the domain name registration record for annualcreditreportmonitoring.com is attached as Exhibit 1.

7. afreeannualcreditreport.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "DOMAIN MAY BE FOR SALE, CHECK AFTERNIC.COM D". A copy of the domain name registration record for afreeannualcreditreport.com is attached as Exhibit 2.

8. thefreeannualcreditreport.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "DOMAIN MAY BE FOR SALE, CHECK AFTERNIC.COM D". A copy of the domain name registration record for thefreeannualcreditreport.com is attached as Exhibit 3.

9. annalcreditreports.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Domain Registries Foundation". A copy of the domain name registration record for annalcreditreports.com is attached as Exhibit 4.

10. annualcrediitreport.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Kevin Mao". A copy of the domain name registration record for annualcrediitreport.com is attached as Exhibit 5.

11. gfreeannualcreditreport.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Private Registrant". A copy of the domain name registration record for gfreeannualcreditreport.com is attached as Exhibit 6.

12. frreannualcreditreport.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Xing Zhou". A copy of the domain name registration record for frreannualcreditreport.com is attached as Exhibit 7.

13. annualcreditreportc.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "zhu yanpeng". A copy of the domain name registration record for annualcreditreportc.com is attached as Exhibit 8.

14. annualannualcreditreport.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Domain Administrator". A copy of the domain name registration record for annualannualcreditreport.com is attached as Exhibit 9.

15. annualcreditreporth.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Domain Administrator". A copy of the domain name registration record for annualcreditreporth.com is attached as Exhibit 10.

16. httpannualcreditreport.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Domain Administrator". A copy of the domain name registration record for httpannualcreditreport.com is attached as Exhibit 11.

17. mannualcreditreport.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Domain Administrator". A copy of the domain name registration record for mannualcreditreport.com is attached as Exhibit 12.

18. annualbusinesscreditreport.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Privacy.co.com". A copy of the domain name registration record for annualbusinesscreditreport.com is attached as Exhibit 13.

19. feeannualcreditreport.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Private Registrant". A copy of the domain name registration record for feeannualcreditreport.com is attached as Exhibit 14.

20. wwwannualcreditreports.com is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is registered by "Private

Registrant". A copy of the domain name registration record for wwwannualcreditreports.com is attached as Exhibit 15.

## JURISDICTION, VENUE AND JOINDER

21. This is a civil action for federal cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) and for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a).

22. This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

23. This Court has *in rem* jurisdiction over the Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A). *In rem* jurisdiction is appropriate under 15 U.S.C. § 1125(d)(2)(A)(ii) because the listed registrant of the Defendant Domain Names is, on information and belief, either a privacy service or a fictitious person/entity, and therefore Plaintiff cannot obtain in personam jurisdiction over a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A) and/or Central Source, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

24. Pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa), Central Source will give notice of the violations of Central Source's rights, and Central Source's intent to proceed *in rem*, to the postal and e-mail addresses set forth in the registration records for each of the Defendant Domain Names.

25. Venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C) in that the .COM domain name registry operator, VeriSign, Inc., is situated in this judicial district, and the Defendant Domain Names are all .COM domain names.

26. Joinder of the Defendant Domain Names is proper under Fed. R. Civ. P. 20(a)(2) in that the *in rem* cybersquatting and trademark infringement claims set forth herein arise out of the same series of transactions and the same questions of law are common to all of the Defendant Domain Names.

## **CENTRAL SOURCE'S RIGHTS**

27. Central Source was created in 2004 to provide consumers with a secure means to request and obtain a free credit report once every 12 months in accordance with the Fair and Accurate Credit Transactions Act. 15 U.S.C. § 1681j.

28. Central Source provides this service to consumers through a website and service available at www.AnnualCreditReport.com, and AnnualCreditReport is the only service/site authorized by the U.S. Federal Trade Commission and the Consumer Financial Protection Bureau to provide this service.

29. Central Source registered the AnnualCreditReport.com domain name on June 25, 2004.

30. Over the course of June and July of 2004, Central Source registered a large number of additional related domain names and now owns more than 600 domain names representing typographical errors of AnnualCreditReport as a defensive measure intended to protect consumers by limiting cybersquatting of domain name registrations related to AnnualCreditReport.

31. Central Source began promoting the AnnualCreditReport mark and website in a press release issued on November 23, 2004. This promotion resulted in several major media organizations nationwide publishing stories that referenced the AnnualCreditReport mark and the AnnualCreditReport.com website address. These organizations included *The Chicago Tribune*,

*The Kansas City Star*, *The New York Times*, *The Sacramento Bee*, *The San Francisco Chronicle*, *The Star-Ledger, USA TODAY*, and *The Washington Post*.

32. As a result of Central Source's promotion of the AnnualCreditReport mark and AnnualCreditReport.com domain name and the corresponding media coverage, consumers immediately associated the AnnualCreditReport mark and the AnnualCreditReport.com domain name with Central Source.

33. The AnnualCreditReport service was launched for public use on November 30, 2004.

34. Since opening for public use, AnnualCreditReport has received more than 675,000,000 visits to AnnualCreditReport.com through July 2017.

35. The U.S. Federal Trade Commission has engaged in a wide ranging public service campaign promoting AnnualCreditReport through informational websites, television and Internet commercials, and audio public service announcements.

36. The Federal Trade Commission has also previously pursued unauthorized Internet uses of AnnualCreditReport and typographical variations of AnnualCreditReport.

37. The Credit Card Accountability Responsibility and Disclosure Act (the "CARD Act") requires certain mandatory references to AnnualCreditReport.com whenever an advertisement or website offers a free credit report.

38. Pursuant to 15 U.S.C. § 1681j(g):

> [A]ny advertisement for a free credit report in any medium shall prominently disclose in such advertisement that free credit reports are available under Federal law at: "AnnualCreditReport.com" (or such other source as may be authorized under Federal law).

39. Pursuant to 12 C.F.R. § 1022.138(b):

(3) All advertisements for free credit reports in print shall include the following disclosure in the form specified below and in close proximity to the first mention of a free credit report. The first line of the disclosure shall be centered and contain only the following language: "THIS NOTICE IS REQUIRED BY LAW." Immediately below the first line of the disclosure the following language shall appear: "You have the right to a free credit report from AnnualCreditReport.com or (877) 322-8228, the ONLY authorized source under Federal law." …

(4) Web sites. Any Web site offering free credit reports must display the disclosure set forth in paragraphs (b)(4)(i), (ii), and (v) of this section on each page that mentions a free credit report and on each page of the ordering process. (i) The first element of the disclosure shall be a header that is centered and shall consist of the following text: "THIS NOTICE IS REQUIRED BY LAW. … ; (ii) The second element of the disclosure shall appear below the header required by paragraph (b)(4)(i) and shall consist of the following text: "You have the right to a free credit report from AnnualCreditReport.com or (877) 322-8228, the ONLY authorized source under Federal law." The reference to AnnualCreditReport.com shall be an operational hyperlink to the centralized source, underlined, and in the same color as the hyperlink to consumerfinance.gov/learnmore required in § 1022.138(b)(4)(i); (v) The third element of the disclosure shall appear below the text required by paragraph (b)(4)(ii) and shall be an operational hyperlink to AnnualCreditReport.com that appears as a centered button containing the following language: "Take me to the authorized source."

40. The mandatory disclosures required by federal law under 15 U.S.C. § 1681j(g) and 12 C.F.R. § 1022.138 have resulted in millions of references to AnnualCreditReport being presented to consumers.

41. Through promotion of AnnualCreditReport by Central Source, the Federal Trade Commission, and third parties that are statutorily required identify AnnualCreditReport, the AnnualCreditReport mark has become famous and/or distinctive throughout the United States in connection with Central Source's services.

42. The Defendant Domain Names represent unauthorized colorable imitations of the AnnualCreditReport mark, which further demonstrates that the AnnualCreditReport mark has acquired distinctiveness and was famous and/or distinctive prior to the time of registration of the Defendant Domain Names.

43. Consumers have come to distinguish and recognize the legitimacy of Central Source's services as a result of the use and widespread promotion of the AnnualCreditReport mark. The AnnualCreditReport mark is entitled to common law trademark rights.

44. The AnnualCreditReport mark is also registered on the Principal Trademark Register of the U.S. Patent and Trademark Office under incontestable registration number 4152650. *See* Exhibit 16.

45. Central Source's federal registration for the AnnualCreditReport mark is *conclusive* evidence of the validity of the mark, of Central Source's ownership of the mark, and of Central Source's exclusive right to use the mark in U.S. commerce.

**UNLAWFUL REGISTRATION AND/OR USE OF THE DOMAIN NAMES**

46. Central Source has engaged in significant efforts to protect consumers by *inter alia* defensively registering domain names that represent typographical variations of AnnualCreditReport and by pursuing the disabling of websites and the transfer of domain names that are being used to confuse and mislead consumers.

47. Where necessary, Central Source also has successfully pursued legal action to obtain the transfer of domain names that infringe upon the AnnualCreditReport mark and were registered in bad faith. *See Central Source LLC v. afreeannualcreditreport.com*, 17-cv-581 (filed May 22, 2017); *Central Source LLC v. freeannualcfreditreport.com*, 17-CV-63 (filed Jan. 13, 2017); *Central Source LLC v. freeannualcreditreport2014.com*, 16-CV-465 (filed Aug. 26, 2016); *Central Source LLC v. anmnualcreditreport.com*, 14-CV-1754 (E.D. Va. Aug. 19, 2015); *Central Source LLC v. annualcrsditreport.com*, 14-CV-1755, 2015 WL 1880187 (E.D. Va. Apr. 23, 2015); *Central Source LLC v. aniualcreditreport.com*, 14-CV-1345 (E.D. Va. Mar. 2, 2015); *Central Source LLC v. aabbualcreditreport.com*, 14-CV-918 (E.D. Va. Nov. 12, 2014, *amended*

Nov. 18, 2014); *Central Source LLC v. annualcreditredport.com*, 14-CV-302, 2014 WL 3891667 (E.D. Va. Aug. 7, 2014); *Central Source LLC v. annualdcreditreport.com*, No. 14-CV-304, 2014 WL 371162 (E.D. Va. Aug. 1, 2014); *Central Source LLC v. annualcreditreport-com.us*, 14-CV-305, 2014 WL 3767071 (E.D. Va. July 30, 2014).

48. The Defendant Domain Names represent typographical errors of AnnualCreditReport. The registration and use of the Defendant Domain Names reflects a type of cybersquatting known as "typosquatting."

49. Upon information and belief, the Defendant Domain Names were registered for the purpose of obtaining Internet visitors when such visitors make a typographical error on their keyboard when attempting to reach AnnualCreditReport.com by typing "AnnualCreditReport."

50. The Defendant Domain Names are configured to display pay-per-click advertisements or to redirect visitors to third-party websites for sales solicitations—when the visitors were actually seeking the AnnualCreditReport service provided by Central Source through AnnualCreditReport.com.

51. Upon information and belief, the registrant(s) of the Defendant Domain Names receive compensation when Internet visitors, who were attempting to reach AnnualCreditReport.com, click on a link provided by a Defendant Domain Name to a third-party website and/or when the Internet visitors are automatically redirected by a Defendant Domain Name to a third-party website for a sales solicitation.

52. The use of the AnnualCreditReport mark within the Defendant Domain Names and/or associated websites is without authorization from Central Source.

53. Upon information and belief, the Defendant Domain Names do not and cannot reflect the legal name of the registrant(s) of the Domain Names.

54. Upon information and belief, the registrant(s) of the Defendant Domain Names has not engaged in bona fide noncommercial or fair use of the AnnualCreditReport mark in a website accessible under the Domain Names.

55. The websites displayed by the registrant(s) of the Defendant Domain Names are likely to be confused with Central Source's legitimate online location at AnnualCreditReport.com and actual consumer confusion is occurring in the marketplace.

56. Upon information and belief, the registrant(s) of the Defendant Domain Names registered the Domain Names with intent to divert consumers away from Central Source's online location at AnnualCreditReport.com, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the Defendant Domain Names and the sites displayed through use of the Defendant Domain Names.

57. Upon information and belief, the Defendant Domain Names are being used to display websites that do not comply with the mandatory disclosure provisions of 15 U.S.C. § 1681j(g) and 12 C.F.R. § 1022.138.

58. Upon information and belief, the registrant(s) of the Defendant Domain Names provided material and misleading false contact information when applying for and maintaining the registration of the Defendant Domain Names in that the person or entity identified as the registrant of the Defendant Domain Names is not the true owner of the Domain Names.

59. Upon information and belief, the registrant(s) of certain of the Defendant Domain Name use services that replace a domain name owner's contact information with names such as "Private Registrant" and "Domain Administrator" and thereby conceal the identity of the true owner(s) of the domain name.

60. Upon information and belief, certain of the Defendant Domain Names were registered by the same person or entity and/or are under the control of the same person or entity.

## COUNT ONE:
### (Violation of the Federal Anti-Cybersquatting Consumer Protection Act)

61. Central Source repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

62. Central Source's federally registered AnnualCreditReport mark is famous and/or distinctive and was famous and/or distinctive prior to the time of registration of the Defendant Domain Names.

63. The aforesaid acts by the registrant(s) of the Defendant Domain Names constitute registration, maintenance, trafficking in, or use of domain names that are confusingly similar to Central Source's AnnualCreditReport mark, with bad faith intent to profit therefrom.

64. In light of the registrant's concealment of the identities of the true owners(s) of the Defendant Domain Names, Central Source is not able to obtain *in personam* jurisdiction over the registrant(s) of the Defendant Domain Names or any other person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

65. Central Source, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

66. The aforesaid acts by the registrant(s) of the Domain Names constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

67. The aforesaid acts have caused, and are causing, great and irreparable harm to Central Source and the public. The harm to Central Source includes harm to the value and goodwill associated with the AnnualCreditReport mark that money cannot compensate. Unless

permanently restrained and enjoined by this Court, said irreparable harm will continue. Thus, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), Central Source is entitled to an order transferring the Defendant domain name registrations to Central Source.

## COUNT TWO:
### (In-Rem Trademark Infringement)

68. Central Source repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

69. At the time the Defendant Domain Names were registered and/or used, Central Source possessed valid federal trademark rights in the AnnualCreditReport mark.

70. In light of the registrant's concealment of the identities of the true owners(s) of the Defendant Domain Names, Central Source is not able to obtain *in personam* jurisdiction over the registrant(s) of the Defendant Domain Names or any other person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

71. Central Source, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

72. The registration and use of the Defendant Domain Names are a use in commerce.

73. The registration and use of the Defendant Domain Names affect Central Source's ability to use its AnnualCreditReport mark in commerce.

74. The Defendant Domain Names and their respective registrant(s) have no valid rights in the AnnualCreditReport mark.

75. At the time the Defendant Domain Names were registered and/or used, the Defendant Domain Names and their respective registrant(s) were on actual and/or constructive notice, pursuant to Section 22 of the Lanham Act, 15 U.S.C. § 1072, of the existence of Central

Source's superior rights in its AnnualCreditReport mark by reason of the existence, at that time, of Central Source's aforestated federal trademark rights.

76. Use by the Defendant Domain Names and their respective registrant(s) of the AnnualCreditReport mark is without the permission or authorization of Central Source.

77. The aforesaid registration and/or use of the Defendant Domain Names has caused and is likely to continue to cause confusion, mistake and/or deception among consumers and the public, leading the public falsely to believe that the Defendant Domain Names and/or websites provided thereunder are those of, are sponsored or approved by, or are in some way connected with Central Source.

78. The aforesaid registration and use of the Defendant Domain Names constitutes direct infringement of Central Source's trademark rights in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

79. The aforesaid acts have caused, and are causing, great and irreparable harm to Central Source and the public. The harm to Central Source includes harm to the value and goodwill associated with the AnnualCreditReport mark that money cannot compensate. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

## PRAYER FOR RELIEF

WHEREFORE, Central Source respectfully requests of this Court:

1. That judgment be entered in favor of Central Source on its claims of cybersquatting and trademark infringement.

2. That the Court order the Defendant Domain Names be transferred to Central Source through transfer by VeriSign, Inc. of the Defendant Domain Names from the current

domain name registrars to Central Source's domain name registrar of choice and by such registrar's change of the registrant to Central Source.

3. That any other domain names registered by the registrant(s) of the Defendant Domain Names that resemble or include the AnnualCreditReport mark be transferred to Central Source.

4. That the Court order an award of costs and reasonable attorney's fees incurred by Central Source in connection with this action pursuant to 15 U.S.C. § 1117(a); and

5. That the Court order an award to Central Source of such other and further relief as the Court may deem just and proper.

Dated: April 19, 2018   By:   /s/ Attison L. Barnes, III
Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (*for pro hac admission*)
WILEY REIN LLP
1776 K St. NW
Washington, DC 20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
abarnes@wileyrein.com
dweslow@wileyrein.com

*Counsel for Plaintiff
Central Source LLC*