IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| Central Source LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 1:18-cv-00453-AJT-MSN |
| | ) | |
| annualcreditreportmonitoring.com, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT & RECOMMENDATION

This matter comes before the Court on plaintiff Central Source LLC's ("plaintiff" or

"Central Source") Motion for Default Judgment (Dkt. No. 14). Having reviewed the record and the

pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiff's

favor for the reasons that follow.

I.    **Procedural Background**

On April 19, 2018, plaintiff brought an *in rem* action against the following defendants:

annualcreditreportmonitoring.com; afreeannualcreditreport.com; thefreeannualcreditreport.com;

annalcreditreports.com; annualcrediitreport.com; gfreeannualcreditreport.com;

frreannualcreditreport.com; annualcreditreportc.com; annualannualcreditreport.com;

annualcreditreporth.com; httpannualcreditreport.com; mannualcreditreport.com;

annualbusinesscreditreport.com; feeannualcreditreport.com; and wwwannualcreditreports.com

(collectively referred to as "defendant Domain Names") (Dkt. No. 1). The Complaint alleges two

counts against defendant Domain Names: Count One alleges cybersquatting under the Federal Anti-

Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"); and Count Two alleges

trademark infringement under the Lanham Act, 15 U.S.C. § 1141(1) ("Lanham Act").[1] *Id.* at ¶ 1.

Plaintiff seeks a judgment entered in its favor on Counts One and Two; an order directing defendant

Domain Names' current domain name registrar, VeriSign, Inc. ("VeriSign"), to transfer defendant

Domain Names to plaintiff's domain name registrar of choice, GoDaddy.com LLC

("GoDaddy.com"), and directing GoDaddy.com to take all necessary steps to have plaintiff listed as

the registrant for defendant Domain Names; an order directing that any other domain names

registered by the registrant of defendant Domain Names that resemble or include the

AnnualCreditReport mark be transferred to plaintiff; and an award of plaintiff's costs and

reasonable attorney's fees incurred pursuant to 15 U.S.C. § 1117(a), among any other relief as the

court may deem just and proper. *Id.* at pgs. 15-16. On June 26, 2018, plaintiff voluntarily dismissed

the following defendant Domain Names: annualcredireeport.com; annualcreditreorts.com;

annualcriedtreport.com; freennualcreditreport.com; annualcreditreoirt.com; and

annualcreiditreport.com (Dkt. No. 7).

On August 10, 2018, plaintiff moved for an entry of default judgment against the remaining

defendant Domain Names[2] (Dkt. No. 11), supported by a declaration executed by Ari S. Meltzer

stating that plaintiff effectively served process on defendant Domain Names and that they failed to

---

[1] Plaintiff has previously pursued numerous actions in this court seeking a transfer of similar domain names that infringe on the AnnualCreditReport mark and that were registered in bad faith. *See, e.g.*, *Central Source LLC v. afreeannualcreditreport.com, et al.*, No. 1:17-cv-00581-AJT-IDD (E.D. Va. June 8, 2018) (granting plaintiff's motion for default judgment); *Central Source LLC v. freeannualcfreditreport.com, et al.*, No. 1:17-cv-00063-AJT-TCB (E.D. Va. May 23, 2017) (same); *Central Source LLC v. freeannualcreditreport2014.com, et al.*, No. 1:16-cv-00465-AJT-TCB (E.D. Va. Feb. 24, 2017) (same); *Central Source LLC v. anmnualcreditreport.com, et al.*, No. 1:14-cv-01754 (E.D. Va. Aug. 19, 2015) (same); *Central Source LLC v. annualcrsditreport.com, et al.*, No. 1:14-cv-01755-LO-JFA (E.D. Va. Apr. 23, 2015) (same); *Central Source LLC v. aniualcreditreport.com, et al.*, 1:14-cv-01345-LO-JFA (E.D. Va. Mar. 2, 2015) (same); *Central Source LLC v. aabbualcreditreport.com, et al.*, 1:14-cv-00918-LO-JFA (E.D. Va. Nov. 12, 2014, *amended* Nov. 18, 2014) (same); *Central Source LLC v. annualcreditredport.com, et al.*, 1:14-cv-00302-AJT-JFA (E.D. Va. Aug. 7, 2014) (same); *Central Source LLC v. annualdcreditreport.com, et al.*, No. 1:14-cv-00 304-LO-JFA (E.D. Va. Aug. 1, 2014) (same); and *Central Source LLC v. annualcreditreportcom.us, et al.*, 1:14-cv-00305-TSE-JFA (E.D. Va. July 30, 2014) (same).

[2] The remaining defendant Domain Names include: annualcreditreportmonitoring.com; afreeannualcreditreport.com; thefreeannualcreditreport.com; annalcreditreports.com; annualcrediitreport.com; gfreeannualcreditreport.com; frreannualcreditreport.com; annualcreditreportc.com; annualannualcreditreport.com; annualcreditreporth.com; httpannualcreditreport.com; mannualcreditreport.com; annualbusinesscreditreport.com; feeannualcreditreport.com; and wwwannualcreditreports.com.

answer or otherwise respond to the Complaint (Dkt. No. 12). The Clerk of Court entered default

against defendant Domain Names on August 17, 2018 (Dkt. No. 13). That same day, plaintiff filed a

motion for a default judgment (Dkt. No. 14), along with a memorandum in support (Dkt. No. 15)

and a notice of hearing for September 7, 2018 (Dkt. No. 16), seeking an order directing VeriSign to

transfer defendant Domain Names to GoDaddy.com and directing GoDaddy.com to take all

necessary steps to have plaintiff listed as the registrant for the domain names, and further dismissing

Count Two, trademark infringement under the Lanham Act, without prejudice because the relief

plaintiff seeks can be granted under the ACPA. On September 7, 2018, counsel for plaintiff

appeared at the hearing on the motion for default judgment before the undersigned Magistrate Judge

and no claimant appeared on behalf of defendant Domain Names (Dkt. No. 17).

## II.   Factual Background

The following facts are established by plaintiff's Complaint (Dkt. No. 1) and Memorandum of

Points and Authorities in Support of Plaintiff's Motion for Default Judgment (Dkt. No. 15).

Plaintiff is a corporation organized and existing under Delaware law with a principal place of

business in Atlanta, Georgia. Compl. (Dkt. No. 1) ¶ 5. Based on the records in the WHOIS database

of domain name registrations, the registrants for defendant Domain Names are either a privacy

service, which replaces a domain name owner's contact information with names such as "Private

Registrant" or "Domain Administrator" to conceal the identity of the true owner of the domain

names, or a fictitious person or entity. *Id.* at ¶¶ 23, 59. Defendant Domain Names were registered by

the same person or entity and are under control of that same person or entity. *Id.* at ¶ 60.

Plaintiff provides consumers with a secure means to request and obtain a free credit report once

every twelve months in accordance with the Fair and Accurate Credit Transactions Act, 15 U.S.C. §

1681j ("FACTA"). *Id.* at ¶ 27. Plaintiff provides this service through

<www.AnnualCreditReport.com>, which is the only site authorized by the United States Federal

Trade Commission ("FTC") and the Consumer Financial Bureau ("CFB") to provide this service. *Id.* at ¶ 28. Plaintiff registered the "AnnualCreditReport.com" domain name on June 25, 2004, *id.* at ¶ 29, and further registered over 600 additional related domain names that contain typographical errors of the AnnualCreditReport mark as a defensive measure to limit potential cybersquatting of related domain name registrations, *id.* at ¶ 30.

Plaintiff began promoting the AnnualCreditReport mark in November 2004, along with the FTC engaging in a "wide ranging public service campaign" promoting the mark, which resulted in substantial media coverage. *Id.* at ¶¶ 31, 35. Additionally, various federal statutes and regulations require third parties that advertise or offer a free credit report to identify <AnnualCreditReport.com>. *Id.* at ¶¶ 37-39. *See, e.g.*, 15 U.S.C. § 1681j(g); 12 C.F.R. § 1022.138(b). Due to the promotions and mandatory disclosures, the AnnualCreditReport mark has become famous and/or distinctive throughout the United States and consumers associate the mark with plaintiff. *Id.* at ¶¶ 32, 41. Since opening for public use, AnnualCreditReport has received more than 675,000,000 visits to <AnnualCreditReport.com> through July 2017. *Id.* at ¶ 34. On June 5, 2012, the AnnualCreditReport Mark was registered on the Principal Trademark of the U.S. Patent and Trademark Office ("USPTO") under registration number 4152650.[3] *Id.* at ¶ 44; *see also* Compl., Ex. 16 (Dkt. No. 1-1) 90. This registration serves as conclusive evidence of the validity of the mark, plaintiff's ownership of the mark, and plaintiff's exclusive right to use the mark in connection with goods and services. Compl. (Dkt. No. 1) ¶ 45.

Defendant Domain Names represent typographical errors of AnnualCreditReport, also known as "typosquatting," which "harms consumers by causing confusion with the legitimate sites being sought by the consumers and very often results in consumers' computers being infected with

---

[3] Due to such consumer recognition, plaintiff also alleges that the AnnualCreditReport mark is entitled to common law trademark rights. Compl. (Dkt. No. 1) ¶ 43.

computer viruses, 'bloatware' or other unwanted software, consumer's personal information being collected and misused, and/or consumers being presented with an endless stream of unwanted advertisements." *Id.* at ¶¶ 3, 48. Accordingly, plaintiff alleges that defendant Domain Names were registered for the purpose of obtaining internet visitors when such visitors make a typographical error when attempting to reach <AnnualCreditReport.com>. *Id.* at ¶ 49. Specifically, defendant Domain Names receive compensation for "pay-per-click advertisements," when consumers click on a link provided by a defendant Domain Name to a third-party website, and when consumers are automatically redirected to third-party websites for sale solicitations. *Id.* at ¶ 50. Accordingly, plaintiff contends that defendant Domain Names were registered with the intent to divert consumers away from plaintiff's online location at <AnnualCreditReport.com> for commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of defendant Domain Names and the sites displayed through the use of defendant Domain Names, *id.* at ¶ 56, which use does not comply with the mandatory disclosure provisions set forth in 15 U.S.C. § 1681j and 12 C.F.R. § 1022.138, *id.* at ¶ 57. Due to defendant Domain Names' actions, plaintiff alleges that it suffers great and irreparable harm to the value and goodwill associated with the AnnualCreditReport mark. *Id.* at ¶¶ 67, 79.

## III.   Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. The court has original subject matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) because this action arises under federal law, the ACPA and the Lanham Act. There is *in rem* jurisdiction over defendant Domain Names pursuant to 15 U.S.C. § 1225(d)(2)(A) because defendant Domain Names have violated plaintiff's trademark, § 1225(d)(2)(A)(i), and plaintiff cannot obtain personal jurisdiction of defendant Domain Names because the listed registrant of defendant Domain Names is "either a privacy

service or a fictitious person/entity," § 1225(d)(2)(A)(ii)(I); *see also* Compl. (Dkt. No. 1) ¶ 23.

Venue is proper pursuant to 15 U.S.C. § 1125(d)(2)(C) because the registry for defendant Domain

Names, VeriSign, is located within this court's judicial district and defendant Domain Names are all

.COM domain names. *Id.* at ¶ 25.

> The ACPA provides that for *in rem* actions, service of process must be made by:

>> (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

>> (bb) publishing notice of the action as the court may direct promptly after filing the action.

15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa)-(bb). Plaintiff has complied with subsection (aa) by providing

the current registrant of defendant Domain Names with notice of plaintiff's intent to proceed *in rem*

and including a copy of the Complaint. Pl. Mem. In Support of Mtn. Publication, Ex. A (Dkt. No. 4-

1) ¶ 6. The notice was sent to the postal and email addresses set forth in the registration for

defendant Domain Names. *Id.* Plaintiff further complied with subsection (bb) by filing a Motion for

Service of Publication on June 8, 2018 (Dkt. No. 3), which the Court granted on June 27, 2018

requiring plaintiff to publish the Order in *The Washington Times* or *The Washington Post* within

fourteen days after entry of the Order and to file a declaration within twenty days after entry of the

Order describing the steps plaintiff took to comply with the Order (Dkt. No. 8). Accordingly, on

July 5, 2018, plaintiff published a copy of the Court's June 2018 Order in *The Washington Times*

advising defendant Domain Names of the instant action and filed a declaration describing plaintiff's

compliance with the Court's Order on July 26, 2018. *See* Meltzer Declr. (Dkt. No. 9) ¶¶ 4-5.

Because defendant Domain Names failed to file an answer or respond within twenty-one days from

the date of publication in *The Washington Times*, the Clerk entered the default of defendant Domain

Names (Dkt. No. 13).

## IV.     Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendant Domain Names have not answered or otherwise timely responded, the well-pleaded allegations of fact contained in the Complaint are deemed to be admitted.

## V.     Analysis

Having examined the record, the undersigned Magistrate Judge finds that the well-pleaded allegations of fact in the Complaint, supported by plaintiff's Motion for Default Judgment and Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment, establish that defendant Domain Names violated the ACPA. Given plaintiff's request, the undersigned Magistrate Judge further finds that Count Two should be dismissed without prejudice.[4] Accordingly, plaintiff is entitled to the relief requested in its motion for default judgment, the

---

[4] In plaintiff's memorandum in support of its default judgment, it requested "that the Court dismiss the Second Count of In Rem Trademark Infringement [under the Lanham Act] without prejudice given that the only relief being sought may be ordered pursuant to the First Count of In Rem Cybersquatting." Pl. Br. (Dkt. No. 15) 5.

transfer of defendant Domain Names to plaintiff and for plaintiff to be listed as the registrant for the domain names.

The ACPA provides that a person is liable to a trademark owner if that person (1) registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive or famous mark or is a trademark and (2) has a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A)(i)-(ii); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). The Complaint pleads both that defendant Domain Names are confusingly similar to plaintiff's distinctive AnnualCreditReport mark and that the registration and use of the domain names was in bad faith.

Plaintiff's registration of the AnnualCreditReport mark on the Principal Trademark Register of the USPTO is *prima facie* evidence that the mark is at least descriptive and distinctive. *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001) ("With a certificate of registration, therefore, the registrant obtains prima facie evidence that its mark is not generic in the eyes of the relevant public and that its mark is not 'merely' descriptive, but at a minimum is descriptive *and* has obtained secondary meaning.") (internal citations omitted) (emphasis in original). Moreover, courts have found secondary meaning associated with a trademark where there is extensive advertising expenditures, sales successes, attempts to plagiarize a mark, and when the mark has been used exclusively for an extended period of time, among other factors. *See, e.g.*, *Perini Corp. v. Perini Constr. Inc.*, 915 F.2d 121, 125 (4th Cir. 1990) (quoting *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 213 (2d Cir. 1985)). In the instant action, plaintiff establishes that the AnnualCreditReport mark has generated a secondary meaning based on the above-listed factors. Plaintiff alleges that it has used the AnnualCreditReport mark for over fourteen years in interstate commerce to provide consumers with a secure means to request and obtain a free credit report once every twelve months in accordance with federal law. Compl. (Dkt. No. 1) ¶ 27. In addition to the longevity of plaintiff's

use of the AnnualCreditReport mark, plaintiff also alleges that it and the FTC engaged in extensive advertising to promote the mark, which generated substantial media coverage. *Id.* at ¶¶ 36-39. Due to the promotion of the mark, AnnualCreditReport has received more than 675,000,000 visits to <AnnualCreditReport.com> through July 2017. *Id.* at ¶ 34. Moreover, plaintiff has successfully brought various lawsuits against domain names similar to defendant Domain Names seeking transfer of those domain names that infringe on the AnnualCreditReport mark and were registered in bad faith. *Id.* at ¶ 47. Accordingly, the undersigned Magistrate Judge finds that the AnnualCreditReport mark is distinctive, consistent with this court's prior rulings that have recognized the validity and distinctiveness of the AnnualCreditReport mark. *See, e.g.*, *Central Source LLC v. annualdcreditreport.com*, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014) (finding "that the AnnualCreditReport mark is at least distinctive").

The next consideration is whether defendant Domain Names are identical or confusingly similar to the AnnualCreditReport mark. "In assessing whether a mark is confusingly similar, the allegedly infringing domain name does not need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 936 (4th Cir.1995)); *see, e.g.*, *Agri-Supply Co.*, 457 F. Supp. 2d at 664 (finding that defendant's domain name "Agrisupply.com" was "confusingly similar" to plaintiff's trademark "Agri-Supply," including the domain name "Agri-Suppy.com"). Each of defendant Domain Names includes a misspelling of the distinctive AnnualCreditReport mark. This court has held that "[t]he misspelling of the AnnualCreditReport mark constitutes a clear attempt at typosquatting of the AnnualCreditReport mark insofar as omitting or inserting a letter or letters from the word 'AnnualCreditReport,' altering the order of the letters in the word 'AnnualCreditReport,' or substituting a different letter in the word 'AnnualCreditReport' takes

advantage of common errors made in typing by consumers when attempting to reach <annualcreditreport.com>." *Central Source LLC*, 2014 WL 3811162, at *7. The same holds true in this action. Based on a simple comparison of defendant Domain Names and the AnnualCreditReport mark, the dominant portions of Defendant Domain Names are simply variations of the AnnualCreditReport mark, and nothing more. Defendant Domain Names use of typographical errors of the AnnualCreditReport mark demonstrates that they sought to capitalize on consumer confusion between the domain names and the mark to generate their own capital gains.

Having found that AnnualCreditReport mark is distinctive and that defendant Domain Names are confusingly similar to the AnnualCreditReport mark, the last consideration is whether defendant Domain Names were registered or used in bad faith with the intent to profit. The ACPA lists several factors that a court may consider in determining bad faith, but do not need to be exhaustively considered. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005). These factors include:

> (I) a defendant's intellectual property rights in the domain name;
>
> (II) the extent to which the name consists of defendant's legal name;
>
> (III) a defendant's prior use of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) a defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark;
>
> (VI) a defendant's offer to transfer, sell, or otherwise assign the domain name to the plaintiff or any third party for financial gain without having used, or the intent to use, the domain name in the bona fide offering of any goods or services;
>
> (VII) a defendant's provision of misleading or false contact information when applying for registration of the domain name;
>
> (VIII) a defendant's registration or acquisition of multiple domain names which it knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names without regard to the goods or services of the parties; and

(IX) to the extent to which the mark incorporating in a defendant's domain name registration is or is not distinctive.

*See* 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX). In relevant part, the undersigned Magistrate Judge finds that defendant Domain Names do not have intellectual property rights in the domain names, § 1125(d)(1)(B)(i)(I); they have not engaged bona fide noncommercial or fair use of the mark or a bona fide offering of any goods or services, § 1125(d)(1)(B)(i)(III)-(IV); they are using the domain names to divert consumers away from plaintiff's website for commercial gain that has resulted in harm to the AnnualCreditReport mark, § 1125(d)(1)(B)(i)(V); they have supplied false contact information when registering the domain names, § 1225(d)(1)(B)(i)(VII); they sought to have the domain names be confusingly similar to the AnnualCreditReport mark, § 1225(d)(1)(B)(i)(VIII); and the AnnualCreditReport mark is distinctive, § 1225(d)(1)(B)(i)(IX).

Accordingly, plaintiff's Complaint pleads sufficient facts to show that plaintiff possess trademark rights in defendant Domain Names, that defendant Domain Names are confusingly similar to the AnnualCreditReport mark, and that defendant Domain Names had bad faith intent to profit from using the domain names. 15 U.S.C. § 1125(d)(1)(A)(i)-(ii); *Doughney*, 263 F.3d at 367. Therefore, the undersigned Magistrate Judge finds that plaintiff is entitled to relief under the ACPA.

## VI.     Recommendation

For the foregoing reasons, the undersigned recommends:

1)  Granting Plaintiff's Motion for Default Judgment;

2)  An Order directing that VeriSign change the registrar of record for each defendant Domain Name to GoDaddy.com and that GoDaddy.com take the necessary steps to have plaintiff listed as the registrant for the domain names; and

3)  Dismissing Count Two of the Complaint because plaintiff's relief may be granted exclusively under the ACPA.

## VII.    Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and

Recommendation to defendant Domain Names at their address for service of process, the parties are

notified as follows. Objections to this Report and Recommendation must be filed within fourteen

(14) days of service on you of this Report and Recommendation. Failure to file timely objections to

this Report and Recommendation waives appellate review of the substance of this Report and

Recommendation and waives appellate review of a judgment based on this Report and

Recommendation.

/s/
_____
Michael S. Nachmanoff
United States Magistrate Judge

October 5, 2018
Alexandria, Virginia